IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**CRANDALL JAMES**                                                    **PLAINTIFF**

v.                      **No. 4:22CV94-GHD-JMV**

**SUNFLOWER CO. SHERIFF'S DEPT., ET AL.**                  **DEFENDANTS**

**MEMORANDUM OPINION**

This matter comes before the court on the *pro se* prisoner complaint of Crandall James, who challenges the conditions of his confinement under 42 U.S.C. § 1983 – which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit.[1] The plaintiff alleges that the Municipal Defendants failed to provide him with adequate medical care after he injured his hand during his stay at the Sunflower County Jail. *See* Doc. 1 (Complaint) and various supplements. The Municipal Defendants seek [93] summary judgment, arguing that the plaintiff's allegations do not state a valid claim for relief on the merits of his allegations of denial of adequate medical care. Doc. 94 (Memorandum in Support of Motion for Summary Judgment). The defendants also argue that the plaintiff has not identified a policy of practice by the City of Inverness giving rise to the alleged constitutional violation – and that defendant Mayor Smith is cloaked with qualified immunity. The plaintiff has responded [110] to the Municipal Defendants' motion, and the matter is ripe for resolution. For the reasons set forth below,

---

[1] *See* 42 U.S.C. § 1997e(a); *see also Williams v. Henagan,* 595 F.3d 610 (5th Cir. 2010) (PLRA applies when inmate is incarcerated at the time he files suit, even if he was released during pendency of suit).

the motion [93] by the defendants for summary judgment will be granted, and judgment will be entered in favor of these defendants.

## Factual Background and Allegations

In April 2019, James pled guilty to one count of armed bank robbery and one count of brandishing a firearm during a crime a violence in Cause No. 4:18-CR-79-GHD-JMV (N.D. Miss). Exhibit A (Judgment and Imprisonment Order). James was committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of seventy-two months. *Id.* James was, however, released from federal custody before the seventy-two months expired. *See* Exhibit B (Booking Report, February 23, 2021).

On February 23, 2021, James was arrested by the Sunflower County Sheriff's Department and booked at the Sunflower County Jail on the charges of aggravated assault and felon in possession of a firearm. *Id.* James initially appeared before the Sunflower County Municipal Court on February 25, and his Certificate of Initial Appearance reflects that James' preliminary hearing on these charges was set for March 15. Exhibit C (Certificate of Initial Appearance).

On April 20, James was "released on extradition" from the custody of the Sunflower County Jail and transported to the custody of the Florida Department of Corrections. Exhibit D (Release Report, April 20, 2021). During the Sunflower County Circuit Court June 2021 grand jury term, James was indicted on his February charges of aggravated assault (with a firearm enhancement) and unlawful possession of a firearm by a convicted felon. Exhibit E (Indictment).

In June, James was arrested in Florida after the National Criminal Information Center (NCIC) database alerted Florida officers of James' February charges. On June 25, James was transported back to Mississippi and booked into the Sunflower County Jail. Exhibit F (Booking Report, June 25, 2021).

One month later, on July 20, James punched a wall in his jail cell out of "pure frustration." Compl. [1] at 7. More specifically, he alleges that he "hit[] the wall inside [of his] cell" with his right hand and that it was a "reaction" of "pure frustration." Compl. [1] at 7. That same day, James was evaluated by the staffing nurse at the Sunflower County Jail. Exhibit G (Sick Call Request). The nurse applied ice packs to James' right hand, and he was given Aleve. *Id.* The nurse then instructed jails officials to transport James to the South Sunflower County Hospital for x-ray and treatment. *Id.*

James was transported to the South Sunflower County Hospital later that day. Exhibit H (Sunflower County Medical Records). His radiology report revealed that he sustained an acute fracture in the "base of the midshaft of the fifth metacarpal" (i.e., base of the fifth digit, or pinky finger) and "head of the fourth metacarpal" (i.e., middle of the fourth digit, or ring finger). Exhibit I (Radiology Report). James was treated with a gutter splint—to immobilize his 4th and 5th metacarpal—and a sling, and he was prescribed 800 milligram ibuprofen. Exhibit H (Sunflower County Hospital Records). The treating physician also instructed James to keep his hand rested, iced, and elevated – and to follow up at the Greenwood Orthopedic Clinic on a later date. *Id.* (noting his condition was stable); *see also* Compl. [1] at 8 (James maintained that he was placed in a "cast.")

Six days later James was transported to Greenwood Orthopedic Clinic, where he received additional treatment on his right hand. Exhibit J (Greenwood Orthopedic Clinic Medical Records). There, the physician recommended a "closed reduction and pinning procedure" "in the near future." *Id.* The court notes that this recommendation, especially the timing – "in the near future" – serves as the basis for James' underlying lawsuit. In his complaint, he alleges that "the doctor needed to do *immediate* surgery before the bones would start to heal deformed," but the closed reduction and pinning procedure never took place. Compl. [1] at 8 (emphasis added). James claims that jail officials and Mayor Smith failed to authorize payment for the procedure. *Id.* at 8–9.

- 3 -

Two days after his treatment at the Greenwood Orthopedic Clinic James was "turned over to [the custody of the] U.S. Marshals" and transported to Oxford, Mississippi to complete his federal sentence. Exhibit K (Release Report, July 29, 2021). During his medical screening at the Lafayette County Detention Center, James informed the physician about the July 20 incident. Exhibit L (Medical Screening). He told the physician that he needed surgery and that he had been taking his splint and sling off. Id. In response, the physician instructed James to keep the splt and sling on "at all times;" the splint was reapplied, and James was given 200 milligram ibuprofen. Id.

The next day, July 30, James requested more pain medication. Exhibit M (Request for Medical Care, July 30, 2021). The physician "again" instructed James to leave his splint on. Id. He was also given more medicine. Id.

On August 3, James was evaluated by Dr. Edward Field at Oxford-University Sports Medicine. Exhibit N (University Sports Medicine Medical Records). James complained that he "sustained an injury" "while he was fighting on 07/20/2021." Id. His also described his pain as "moderate in severity," or "constant" but of "dull and [] aching quality." Id. James also asked for another medical opinion because he "believe[d] "he [] need[ed] surgical intervention" on his hand. Id. In response, Dr. Field stated that, "[d]ue to his good range of motion and function, I do not think [James] needs surgery at this time." Id. Dr. Field then recommended applying a functional splint to James' hand (instead of gutter splint) and scheduled a return visit in two weeks. Id.

Soon thereafter, James submitted a second request for medical care and complained that his "Doctor said that [his] operation has to be done in a timely manner or else [his] broken hand could set up an infection or else [his] broken hand could become permanently disable, trying to see what[']s the hold up." Exhibit O (Request for Medical Care). The physician noted that James was (again) not wearing his splint. Id. It was further noted that a functional splint was recommended by Dr. Field. Id.

- 4 -

On August 9, the indictment returned by the June 2021 grand jury was filed in the Sunflower County Circuit Court. Exhibit E (Indictment). James is currently serving his federal sentence.

## Procedural History

On June 27, 2022, James sued the Sunflower County Sheriff's Department and Inverness Police Department, under 42 U.S.C. § 1983, alleging that he was denied adequate medical care in violation of his constitutional rights. Compl. [1] at 7–10. On August 30, the court ordered James to name a valid defendant within twenty-one days, explaining that neither the Sunflower County Sheriff's Department nor Inverness Police Department was a proper defendant in a case proceeding under § 1983. Order [13]. James responded on September 15, naming Sheriff James Haywood, Sunflower County, and the City of Inverness. Resp. [15] at 1–3.

On April 5, 2023, James sought to amend his complaint to add Mayor Smith as a defendant. Mot. to Amend [25]. In his motion, James alleged that Mayor Smith was also responsible for denying payment of the closed reduction and pinning procedure. *Id*. James' motion was granted on May 10. Order [27]. Shortly thereafter, summons was issued to all defendants, which included the County Defendants (i.e., Sunflower County and Sheriff Haywood) and Municipal Defendants (i.e., City of Inverness and Mayor Smith). Summons Issued [29].

The County Defendants and Municipal Defendants filed separate answers and affirmative defenses on June 22. County Defendants' Answer [35]; Municipal Defendants' Answer [40]. The Municipal Defendants now move for summary judgment under Federal Rule of Civil Procedure 56.

## Summary Judgment Standard

Summary judgment is appropriate if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show

that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) and (c)(1). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)). After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998). Substantive law determines what is material. *Anderson*, 477 U.S. at 249.

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992). The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.

1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

### Denial of Medical Treatment

The plaintiff's allegations against the Municipal Defendants regarding denial of adequate medical treatment are without substantive merit. In order to prevail on an Eighth Amendment claim for denial of medical care, a plaintiff must allege facts which demonstrate "deliberate indifference to the serious medical needs of prisoners [which] constitutes 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment . . . whether the indifference is manifested by prison doctors or prison guards in intentionally denying or delaying access to medical care . . . ." *Estelle v. Gamble*, 429 U.S. 97, 104-105, 50 L. Ed. 2d 251, 260 (1976); *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992). The test for establishing deliberate indifference is one of "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Under this standard, a state actor may not be held liable under 42 U.S.C. § 1983 unless plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 838. Only in exceptional circumstances may a court infer knowledge of substantial risk of serious harm by its obviousness. *Id*. Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1986), *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668 (1986).

This same subjective deliberate indifference standard has been applied to pre-trial detainees under the Fourteenth Amendment as well as convicted inmates under the Eighth Amendment. *See*

*Hare v. City of Corinth*, 74 F.3d 633, 648 (5th Cir. 1996). A prisoner's mere disagreement with medical treatment provided by prison officials does not state a claim against the prison for violation of the Eighth Amendment by deliberate indifference to his serious medical needs. *Gibbs v. Grimmette*, 254 F.3d 545 (5th Cir.2001), *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

"Deliberate indifference is not established when medical records indicate that [the plaintiff] was afforded extensive medical care by prison officials." *Brauner v. Coody*, 793 F.3d 493, 500 (5th Cir. 2015). Nor is it established by a physician not accommodating a prisoner's requests in a manner he desired or the prisoner's disagreement with the treatment. *Id.*; *Miller v. Wayback House*, 253 F. App'x 399, 401 (5th Cir. 2007). To meet his burden in establishing deliberate indifference on the part of medical staff, the plaintiff "must show that [medical staff] refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Brauner*, 793 F.3d at 498. As discussed below, the plaintiff received timely and adequate medical care, though he did not agree with the doctors' ultimate decision not to surgically repair his injured hand.

The plaintiff was examined and treated with ice packs and Aleve in the jail the day of his injury, and the nurse referred him to a local hospital. Compl. 1 at 7. He was transported to the hospital that day, where he underwent radiological examination, Exh. H (Sunflower Co. Medical Records), and the report revealed that he had broken two fingers. Exh. I (Radiology Report). He was treated with a splint, a sling, and Ibuprofen. Exh. H. The doctor found that James' condition was stable, and gave instructions for James to rest and elevate his hand, apply ice, and follow up at the Greenwood Orthopedic Clinic. *Id.* He was transported to the Greenwood Orthopedic Clinic six days

later and received more treatment for his injured hand. Exh. J (Greenwood Orthopedic Clinic Medical Records). The physician recommended a corrective surgery "in the near future." *Id*.

He was returned to federal custody two days later, underwent medical screening, and told the screening doctor that he had injured his hand and needed surgery – and that he had been taking off his sling and splint. Exh. L (Medical Screening). He received more treatment over the next few days – and was evaluated on August 3 at Oxford-University Sports Medicine by Dr. Edward Field. Exh. N. (University Sports Medicine Records). Dr. Field decided that James did *not* require surgery because he had "good range of motion and function." *Id*. Instead, Dr. Field recommended a functional splint and scheduled a return visit in two weeks. *Id*. The Sunflower County Grand Jury returned an indictment, which was filed in Sunflower County Circuit Court on August 9. Exh. E. James remains in federal custody.

Put simply, Mr. James received timely and adequate medical care when in the custody of Sunflower County and the City of Inverness. He was treated in the jail and the hospital on the day of his injuries (Compl. 1 at 7); he received follow-up care multiple times, and he was shortly thereafter transferred into federal custody. During his stay at the jail, one orthopedist stated that James' injuries should be surgically corrected. Exh. J. However, a short time later, during his time in federal custody, another orthopedist determined that surgery was not necessary. Exh. N. These facts do not state a claim for deliberate indifference to James' serious medical needs, as they do not show that the defendants "[knew] of and disregard[ed] an excessive risk to inmate health or safety" – that "the official [was] aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [drew] the inference." *Farmer*, 511 U.S. at 383. As such, James' claim of denial of adequate medical care will be dismissed on the merits, as James clearly received adequate medical care during the relevant time.

**Municipal liability**

In addition, the plaintiff's allegations do not establish municipal liability under § 1983, as he has not demonstrated that an official municipal policy or custom caused the constitutional violation alleged. *Piotrowski v. City of Houston*, 51 F.3d 512, 517 (5th Cir. 1995). James has alleged no facts to indicate that any policy-making officials for the city implemented an official policy that caused his alleged constitutional violation; nor has he established a persistent pattern of conduct by city officials that caused the alleged violation. In a § 1983 action, liability may not be imposed upon a governmental entity on a theory of *respondeat superior* for the actions of non-policy making government employees. *Monell*, 436 U.S. at 690-94; *see Doe v. Rains County Independent School District*, 66 F.3d 1402, 1409 (5th Cir. 1995); *Brown v. Bryan County, Texas*, 53 F.3d 1410, 1418 (5th Cir. 1995). James alleges only that the Mayor and the City refused to authorize payment for the medical procedure on his hand, and a single decision of a policy-making official does not rise to the level of a policy or practice. *Estate of Davis ex rel. McCully v. City of North Richmond Hills*, 406 F.3d 375, 383, 386 (5th Cir. 2005). As James has not alleged that either Mayor David Smith or the City of Inverness implemented a policy or practice causing the alleged failure to provide adequate medical care, they should be dismissed from this case.

**Qualified Immunity**

Further, Mayor Smith enjoys qualified immunity as to the plaintiff's allegations against him. "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). To overcome the qualified immunity defense, a plaintiff must meet a two-pronged test. He must first allege a violation of a clearly established constitutional right.

*Wilkerson v. Stalder*, 329 F.3d 431, 434 (5th Cir. 2003); *Heitschmidt v. City of Houston*, 161 F.3d 834, 836-37 (5th Cir.1998). "To be 'clearly established' for purposes of qualified immunity, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Johnson v. Johnson*, 385 F.3d 503, 524 (5th Cir. 2004) (*quoting Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). In addition to alleging the violation of a clearly established constitutional right, a plaintiff must also allege facts showing that the defendant's conduct was objectively unreasonable in the light of the law established at the time of the incident. *Heitschmidt*, 161 F.3d at 836-37. Indeed, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

In this case, the plaintiff was transferred out of the custody of the defendants and into federal custody two days after the first orthopedist concluded that surgery would be warranted "in the near future." Exhibit J (Greenwood Orthopedic Clinic Medical Records). Five days later a second orthopedist determined that surgery was not necessary. Exhibit N (University Sports Medicine Medical Records). It is not clear on this record whether defendant Smith considered or decided whether the City of Inverness would pay for the suggested corrective procedure. Indeed, the plaintiff left the custody state officials a mere two days after the first orthopedist recommended surgery. Two days falls well within the commonly understood definition of "in the near future;" as such, assuming, arguendo, that defendant Smith bore some responsibility for ensuring James underwent surgery, that responsibility passed to James' federal custodians. Hence, even if defendant Smith made the decision not to pay for surgery, that decision did not show that Smith was "plainly incompetent or … knowingly violate[d] the law." *Malley, supra*. As such, the plaintiff's allegations against Mayor Smith will be dismissed under the doctrine of qualified immunity.

## Conclusion

For the reasons set forth above, the plaintiff's allegations regarding denial of adequate medical care will be dismissed on the merits. In addition, the allegations will be dismissed because they do not state a claim for municipal liability. Finally, the plaintiff's allegations against defendant Smith must be dismissed, as he enjoys qualified immunity. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 29th day of May, 2024.

_____
SENIOR JUDGE